**SO ORDERED.**

**SIGNED this 21 day of August, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:                                    )
                                          )
DAVID HALL and LINDA M. HALL, )       Case No. 06-40887
                                          )       Chapter 7
                          Debtors.    )
_____ )

### MEMORANDUM OPINION AND ORDER PARTLY GRANTING, AND PARTLY DENYING, TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S MOTION FOR TURNOVER AND OBJECTION TO EXEMPTIONS

This matter is before the Court on the Trustee's Motion for Summary Judgment.[1]  The

Trustee is seeking summary judgment on her Motion for Turnover of Real Estate and

Personal Property,[2] in which she requested the turnover of specific personal property noted

below, as well as turnover of any other property due Debtors as a result of the death of Linda

Hall's father within 180 days of the filing of bankruptcy.  The Trustee also seeks summary

_____
[1]Doc. 108.

[2]Doc. 9.

judgment on her Objection to Debtors' Homestead Exemption.[3]  Both parties have briefed the issues, and the Court is ready to rule.  This is a core proceeding over which this Court has jurisdiction to enter a final order,[4] and the parties stipulate to jurisdiction and proper venue.

## I.    FINDINGS OF FACT

The Trustee's summary judgment motion properly sets forth facts as to which she contends no material issue of fact exists, and Debtors have agreed to that statement of facts. Accordingly, based largely on the facts set out in the Trustee's motion, the Court makes the following findings of fact.

Debtors, David Hall and Linda M. Hall ("Debtors"), filed a Petition under Chapter 7 of the Bankruptcy Code on September 6, 2006.  On the date of filing, Debtors jointly owned a 1.33 acre tract of land within the city limits of Centralia, Kansas.  The land is commonly known as 1104 4th Street and 1104 ½ 4th Street.  Debtors claim that most of the above described land is exempt, except for the West 81 feet.[5]  The subject real estate is valued at $40,000, and there is a mortgage balance of $7,500.

---

[3]Doc. 11.

[4] 28 U.S.C. § 157(b)(2)(B) and (E) (core proceeding), 28 U.S.C. § 1334 and 11 U.S.C. § 523(c).

[5]Debtors' original Schedule C- Property Claimed as Exempt simply lists "1104 4th Street, City of Centralia, Nehama County, Kansas," making no reference to the size of the tract. Debtors' Amended Schedule C, filed May 9, 2007 (well after the Trustee objected to the original Schedule C on the basis that the tract exceeds one acre within the city) provides the real estate description for the tract, which contains the phrase "containing 1.33 acres, more or less." Amended Schedule C then states "most of the above tract is claimed as exempt; see attachment").  The attachment contains a surveyor-type drawing of the tract with a handwritten note that states "[t]his tract claimed as exempt, except for the West 81 feet."

2

Situated on these 1.33 acres is a house and a mobile home. The house, which has an address of 1104 4th Street, was occupied by Linda Hall and two children on the date of filing. David Hall did not occupy that house on the date of filing, nor was he permitted to do so due to a substantiated finding of child abuse that prohibited him from then residing with his family. Instead, on the date of filing, David Hall lived in a mobile home also located on the 1.33 acres. This property was listed as 1104 ½ 4th Street in the telephone book.

On the date of filing, Debtors owned certain items of non-exempt real and personal property, many of which items were not initially listed on Debtors' bankruptcy schedules. Some of the property not listed included a riding lawn mower and key, window air conditioning units in campers and buildings, firearms, two campers (instead of the one listed), one above-ground pool with pool cover, pump and various equipment and accessories, and real estate lots.[6]

On September 24, 2006, just 18 days after this bankruptcy was filed, and thus clearly within 180 days of the bankruptcy filing, Linda Hall's father, Robert J. Frederick, Sr., passed away. As a result of her father's death, Linda Hall became entitled to receive the following

---

[6]The Trustee's Statement of Fact No. 12 indicates that Debtors owned, on the date of filing, registered and non-registered dogs and dog crates; one boat, motor and trailer and cover; two vehicles (thought to be Blazers); a tank with sprayer and trailer; and go carts. In support of this allegation, the Trustee cites page 3 of the Pretrial Order (Doc. 101). However, that same page of the Pretrial Order (page 7) clearly indicates that Debtors dispute that the Trustee is entitled to turnover of this property, mostly on the basis that Debtors did not own the property, but were holding it for third parties. Therefore, even though Debtors state their general agreement with the Trustee's statement of facts, the Court finds that the statement of fact suggesting that Debtors are actually the owners of this discrete property is not supported by any evidence currently in the record.

3

property: certificates of deposit totaling $38,947.86; a one-fifth interest in a house located in Topeka, Kansas; U.S. bonds in the amount of $3,731.33; proceeds of two life insurance policies in the amounts of $6,651.19 and $4,005.75, respectively; an individual retirement account (IRA) in the amount of $2,858.54; Linda Hall's $4,386.45 pro rata share of certain personal property of the decedent, which was sold at auction; and Linda Hall's $370.74 pro rata share of the decedent's checking account. All of the property received by Linda Hall as a result of her father's death, with the exception of her share of the proceeds from the sale of her father's tangible personal property and his checking account, was received by her as a payable-on-death (POD) beneficiary or by means of some similar form of beneficiary designation. In other words, she did not receive the rest of the funds as a result of being the beneficiary of a will, or by intestate succession.

On October 17, 2006, the Trustee filed the previously referenced Motion for Turnover of Real Estate and Personal Property and Objection to Debtors' Homestead Exemption. Almost seven months later, on May 9, 2007, Debtors filed Amended Schedules A through C, as well as an Amended Statement of Financial Affairs.[7] The Trustee timely objected to the Amended Schedule C and Homestead Exemption.[8] Debtors have never again amended Schedule C to claim any inherited property as exempt.

## II.    STANDARD FOR SUMMARY JUDGMENT

---

[7]Docs. 50 and 51.

[8]Doc. 57.

4

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[9] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[10] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13] In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[14]

If the movant carries this initial burden, the nonmovant who would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the

---

[9]Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[10]*Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

[11]*Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[12]*Id.* (citing *Anderson,* 477 U.S. at 248).

[13]*Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[14]*Id.* (citing *Celotex,* 477 U.S. at 325).

5

nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[15]  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[16]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

## III.    ANALYSIS

### A.    Trustee's Objection to Debtors' Homestead Exemption

The Trustee objects to Debtors' homestead exemption on two bases: 1) because Debtors reside in two different structures located on the same 1.33 acre tract, and 2) because the tract of land exceeds one acre within the city limits.  Only one acre within a city is exempt under Kansas law.[18]  The Trustee claims that David Hall's homestead is limited to

---

[15]*Id.* (citing Fed. R. Civ. P. 56(e)).

[16]*Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[17]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[18]In the Pretrial Order, at pages 6-7, Debtors indicate that <u>if</u> their land is larger than one acre, they will surrender the portion of their land necessary to bring it within the provisions of the Kansas homestead exemption, as both the mobile home and the house can fit within one acre. But Debtors' own amended Schedule C admits the land contains 1.33 acres, and their response to the summary judgment motion indicates agreement with the Trustee's Fact No. 3, which indicates that the tract encompasses 1.33 acres.

6

the mobile home he occupied on the land on the date of filing, and that he cannot exempt his one-half interest in the house that his wife and children occupy. Similarly, the Trustee claims that Linda Hall's homestead is limited to the house that she and the children occupy, and that she cannot exempt her one-half interest in the mobile home that her husband occupied on the date of filing. The Trustee thus seeks turnover to the estate of a one-half interest in the mobile home and a one-half interest in the house.

Under Kansas law, the party claiming homestead protection has the burden of proving the establishment of the homestead.[19] In bankruptcy, however, Federal Rule of Bankruptcy Procedure 4003 governs exemptions, and subsection (c) of Rule 4003 provides: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." This means that the claimed exemption is presumed to be valid, and the Trustee then has the burden of producing evidence to rebut the presumption. If she does so, the burden thereafter shifts back to the debtor to come forward with evidence to demonstrate that the claimed exemption is proper.[20]

To determine the validity of Debtors' claimed homestead exemption, the Court must look to applicable Kansas law.[21] The Kansas Constitution provides for a homestead

---

[19]*See Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 344 & 349 (1974); *Bellport v. Harder*, 196 Kan. 294 (1966).

[20]*In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

[21]*Id.* (citing *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003)).

7

exemption of one acre within the city limits.[22]  The Kansas legislature's statutory version is a bit more expansive; K.S.A. 60-2301 provides, in pertinent part:

> A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists. . . .

"In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'"[23]

The Court must decide whether the fact that one of the two co-debtors, David Hall, occupied a different structure (a mobile home) on the same 1.33 acre tract where the house (in which his co-debtor wife and children reside) is situated impairs the homestead exemption on the house and/or the mobile home for one or both Debtors.  In essence, the Trustee argues that by moving into the mobile home located on the same land that was previously considered part of the family homestead, David Hall effectively abandoned his homestead interest in the house, and created a separate homestead in the mobile home to which Linda Hall owned a one-half interest.  In addition, the Trustee claims that Linda Hall may claim the house as her separate homestead, but that David Hall's one-half interest in "her" house is not exempt.  Debtors disagree, claiming that the entire tract, consisting of both the house and the

---

[22]*See* Kansas Const., Art. 15, §9.

[23]*In re Lampe*, 331 F.3d at 754 (quoting *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).

mobile home, constitutes one homestead that they may jointly claim as exempt—admittedly with the exception of that portion of the land exceeding one acre.

Not surprisingly, the Court has been unable to locate any cases directly on point. The Kansas Supreme Court has, however, had several opportunities to address the impact the use of a separate structure located on the same tract of land as the house in which one or more family members reside has on a homestead claim. For example, in *Hoffman v. Hill*,[24] the Kansas Supreme Court allowed a judgment debtor to claim as exempt two adjoining lots where a building was erected on one lot with a porch extending over to the second lot. The building was used as both a residence for his family and a hotel and boarding house. The defendant also maintained a separate building on the second lot that was used in connection with the family, hotel and boarding house, along with other out-buildings that were located on both lots. The court held:

> . . . it makes no difference that the homestead or a part thereof may be used for some other purpose than as a homestead, where the whole of it constitutes only one tract of land not exceeding in one acre the amount permitted to be exempted under the homestead exemptions laws, and where the part claimed as not part of the homestead has not been totally abandoned as a part thereof by making it, for instance, another person's homestead or a part thereof, or by using it or permitting it to be used in some other manner inconsistent with the homestead interests of the husband and wife.[25]

---

[24]47 Kan. 611 (1892).

[25]*Id.* at 613-14.

9

Similarly, in *Layson v. Grange*,[26] the Kansas Supreme Court held that where a debtor owned three lots that combined to include less than one acre, and also contained a carpenter shop that had been converted to rooms that were rented out to another family, the entire tract of land could be exempted under Kansas homestead laws.

The Kansas Supreme Court also held, in *Iola Wholesale Grocery Co. v. Johnson*,[27] that two contiguous lots that totaled less than one acre qualified as a homestead even though the owner, who resided with his family on the property, also operated a grocery store from a separate building on the property. Finally, in *Barten v. Martin*,[28] the Kansas Supreme Court held that where the debtor resided with his family in a house on a lot that also included a separate building that was rented out to a dentist, the entire property retained its exempt status under Kansas homestead laws.[29]

These holdings of the state's highest court make clear that the inclusion of a separate structure on a debtor's homestead that is not used as the residence for the debtor or his family

---

[26]48 Kan. 440 (1892).

[27]114 Kan. 89 (1923).

[28]133 Kan. 329 (1931) (holding that to show loss of exemption of part of homestead, circumstances must show an intent to abandon that part as a homestead, and the use to which portion of premises is put should be inconsistent with homestead character to warrant exclusion of that part).

[29]In addition to the cases decided by the Kansas Supreme Court dealing with separate structures on the same tract of land, two Kansas bankruptcy courts have also recently held that where debtors own a duplex and reside in one side of the property, while leasing out the other half of the duplex, they are nevertheless entitled to claim the entire duplex as exempt under Kansas law. *In re McBratney*, 2007 WL 2684072 (Bankr. D. Kan. 2007) and *In re McCambry*, 327 B.R. 469 (Bankr. D. Kan. 2005).

does not disqualify the exemption, and result in some of the real estate being subject to execution by creditors. Although the facts of these cases, again, are not directly on point, this Court firmly believes the Kansas courts would find it wholly inconsistent to protect the homestead exemption on a separate building used as a hotel or rented to non-family members, but deny protection when a separate building on the protected tract is occupied by one of the members of the family.

That said, the Kansas cases relied on by this Court all have one factor in common that, if not present in this case, could result in a ruling favorable to the Trustee. In each of the cases cited, the separate properties in question were at all times under the control of the debtor and were only leased or rented out to tenants. There was never any intent by the debtor in those cases to abandon that portion of the property that contained the additional structures or to treat any portion of the homestead as the permanent homestead of another individual. In fact, in *Hoffman v. Hill*, the Kansas Supreme Court specifically limited its holding by stating that the homestead exemption remained attached to the entire property as long as "the part claimed as not part of the homestead has not been totally abandoned as a part thereof by making it, for instance, another person's homestead or a part thereof, or by using it or permitting it to be used in some other manner inconsistent with the homestead interests of the husband and wife."[30]

---

[30]*Hoffman*, 47 Kan. at 613-14 (emphasis added).

11

The facts agreed to by the parties infer that David Hall once lived in the house located on the 1.33 acres, which house he holds in joint tenancy with Linda Hall, and that he occupied that house as his homestead for some unknown period of time before he moved to the mobile home.[31] Unless David Hall intended to abandon the house as his homestead, and to establish the mobile home as his new homestead, the Court finds that the mobile home is simply part of the parties' joint homestead, much like the separate buildings held to be exempt by the Kansas Supreme Court in the cases cited above. Conversely, if David Hall did intend to and did abandon the family home as his homestead, and instead intended to and did establish the mobile home as his new homestead, the Court would likely find that the mobile home was no longer part of Debtors' joint homestead, and must be treated separately.

Once a homestead is established, two elements are required to find that the homestead has been abandoned: removal from the property and an intent not to return.[32] There is no question in this case that David Hall was removed from the house; Debtors agree to that fact. Apparently he was required to live elsewhere by court order.[33] However, it is unclear

---

[31]The facts do not clearly establish that David Hall once lived in the house and could have claimed it as his homestead, but there is no indication that the family once lived elsewhere or that David Hall never lived in the house. In the event the Trustee wishes to contest this fact at trial, she is free to do so and the Court's assumption that David Hall once lived in the house will not be treated, at trial, as a binding factual determination.

[32]*In re Snook*, 134 B.R. 424, 425-26 (D. Kan. 1991) (citing *In the Matter of the Estate of Fink*, 4 Kan. App. 2d 523 (1980)).

[33]The only evidence cited by the Trustee in support of her Fact No. 9 is a document entitled "Notice of Substantiation." A review of that document does not reflect any order requiring Debtor David Hall to leave the family home and live elsewhere. But the stated fact, itself, does so indicate and Debtors agreed with the stated fact, so the Court deems the fact

whether he was forever barred from returning to the family home, whether he had no intent to return to the house in the future, or whether he considered the move out of the house into the mobile home to be a permanent arrangement. The agreed "fact" indicates that he was required to vacate the house due to a finding of child abuse, but the agreed facts do not establish whether such bar from residing in the home was permanent, or was only to last for a term of months or years, such as when the child reached the age of majority and left the family home, or after the parties received counseling.

Similarly, in order to establish a homestead, a party must intend to occupy it as a homestead and must actually occupy it as a homestead within a reasonable time.[34] The owner's intention is critical in determining whether a homestead has been established.[35] The record does not indicate whether David Hall intended to establish a new and permanent homestead in the mobile home, or whether it was simply viewed as a temporary residence until he was able to either move on to another location or move back into the family home.[36]

---

admitted.

[34]*Id.* at 425 (citing *Security State Bank of Scott City v. Coberly*, 5 Kan. App. 2d 691 (1981)).

[35]*Id.* (citing *Smith v. McClintock*, 108 Kan. 833 (1921)).

[36]In Debtors' response to the Trustee's motion for summary judgment (Doc. 114), they note that David Hall has now returned to the main family home. Debtors' Response at p.2. This does not prove that as of the date of the filing of this bankruptcy, Debtor David Hall did not have an intent to abandon the main family home, but may be a factor to consider at trial. Further, because this "fact" has not been presented to the Court by way of interrogatories, admissions on file, affidavits or other sworn testimony, as required by Rule 56 of the Federal Rules of Civil Procedure, as incorporated into the Bankruptcy Rules by Rule 7056, this argument is insufficient to create a fact upon which the Court may rely for purposes of this summary judgment motion.

This second use would be extremely similar to the uses that have previously been authorized by the Kansas Supreme Court, as outlined above.

The Court finds these two factual issues to be critical in deciding the Trustee's objection to the homestead exemption. If David Hall intended to abandon his claim to a homestead in the family home and intended to instead establish a new and permanent homestead in the mobile home situated on the same land, then the Court would likely find, under the language contained in *Hoffman v. Hill*, that Mr. Hall had abandoned that portion of his original homestead and that it is no longer part of the original homestead held jointly by Debtors. However, if Mr. Hall never intended to abandon the family home as his homestead, or did not intend to create a new homestead in the mobile home, then the Court would likely find that the Kansas Supreme Court cases discussed in this opinion dictate a finding that the mobile home is simply part of the family homestead—the same as if the mobile home had been rented out to a tenant or used as a boarding house.

The Court finds that resolution of this genuine issue of material fact is necessary before judgment can be entered for either party. In addition, the Court notes that even if it were to find that the mobile home constituted a separate and distinct homestead, as the Trustee advocates, the Trustee's attempt to recover a one-half interest in what would then be two separate homesteads may not be the appropriate remedy. The Trustee's position presumes that two spouses, as joint debtors, can each claim a separate piece of real property as their exempt homestead. The Court is unaware of any Kansas law that would allow

14

married debtors to claim separate homestead exemptions on different pieces of property.[37] The result of a finding that Debtors have established two separate homesteads could be that they are forced to choose which homestead to exempt, while leaving the other homestead unprotected from the Trustee.[38] Before reaching any conclusion on this legal issue, however, the Court must conduct an evidentiary hearing on the issue of whether or not two separate homesteads even exist under the pertinent facts.

### B. Trustee's Motion for Turnover of Property

The Trustee's Motion for Turnover also seeks turnover of various items of personal property, which property came into Debtors' possession in various ways. In her summary judgment motion, however, the Trustee only seeks judgment regarding property received by Debtors following the death of Linda Hall's father about two weeks after the filing of this bankruptcy. The property at issue can generally be divided into three categories: proceeds from her father's life insurance policies, property acquired as the beneficiary of a POD or similar account, and property acquired through inheritance of personal property from her father's estate.

---

[37]This Court confronted this issue in *In re Johnson*, 2003 WL 23811676 (Bankr. D. Kan. 2003), but that case was ultimately resolved on other grounds.

[38]If the Court were to treat this property as two separate homesteads and allow each Debtor to claim a separate homestead in this case, as the Trustee proposes, the Court also notes that the West 81 feet of the property could likely be claimed as exempt by one or the other Debtor, as each Debtor would be entitled to claim up to one acre of land along with the structures located on that land. In other words, it is conceivable that a total of two acres of land could be claimed as exempt if Debtors are forced to treat the mobile home as a separate homestead.

15

### 1.    Life Insurance Proceeds

The first objection by the Trustee relates to proceeds of two insurance policies on the life of Ms. Hall's father.  Her share of those policies is $10,656.94.  The commencement of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code automatically creates an estate.  Property of the estate is broadly defined to include "all the following property, wherever located and by whomever held:

> (1) ... all legal or equitable interests of the Debtor in property as of the commencement of this case."[39]

Congress has expanded the scope of property included in the bankruptcy estate, pursuant to § 541(a)(5), to include certain property acquired by a debtor within the 180 day period following the filing of the petition.

Section 541(a)(5)(C) specifically provides that property acquired by a debtor as a beneficiary of a life insurance policy within 180 days of the filing of a bankruptcy petition is property of the bankruptcy estate.  Because the parties have stipulated that the property was acquired within 180 days, there is no dispute about the life insurance proceeds being included in the bankruptcy estate.

_____

[39] 11 U.S.C. § 541(a).  This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

16

Debtors do not contest the fact that the proceeds are part of the estate, but instead claim that the proceeds can be exempted under Kansas law.[40] K.S.A. 40-414(a)(4) provides that "the policy and its reserves, or the present value, shall inure to the sole and separate benefit of the beneficiaries named in the policy and shall be free from . . . the claims and judgments of the creditors and representatives of any person named as a beneficiary in the policy of insurance." This statutory provision has been interpreted to exempt not only the cash value of an insurance policy from the creditors of a beneficiary, but the proceeds from that policy as well.[41]

Accordingly, although it is clear that these life insurance proceeds could be exempted under Kansas law,[42] Debtors have made no effort to actually claim them as exempt. "Generally, if the debtor claims property as exempt and 'a party in interest' does not object, that property is exempt from property of the estate."[43] Conversely, as Collier on Bankruptcy succinctly notes:

> Section 522(b) provides that "notwithstanding section 541 of this title, an individual debtor *may exempt* from property of the estate" (emphasis added). Therefore, the

---

[40]Kansas is an opt-out state, which means that a debtor's exemptions are determined by state law, subject to applicable Bankruptcy Code limitations. *See* 11 U.S.C. § 522(b)(2) and K.S.A. 60-2312.

[41]*See In re Chadwick*, 113 B.R. 540 (Bankr. W.D. Mo. 1990)( holding "the proceeds of the policy are part of the 'reserve' held for future use by the beneficiaries and are therefore exempt under Kansas law.") and *In re Douglas*, 59 B.R. 836 (Bankr. D. Kan. 1986) (holding that proceeds from a life insurance policy are exempt under Kansas law).

[42]*Id*.

[43]*In re Scrivner*, ___ F.3d ___, 2008 WL 3166977 (10th Cir. 2008)(citing 11 U.S.C. § 522(l)).

17

exemption must be claimed in order to have it be effective. Otherwise, the exemptible property will remain property of the estate. [44]

Pursuant to Fed. R. Bankr. Proc. 1007(h), debtors who acquire an interest in property pursuant to § 541(a)(5) are required to file (within ten days after the information becomes known to them) a supplemental schedule in their Chapter 7 case concerning that property. At the same time, if any of the property is exemptible, it is expected that the debtor will file an amended Schedule C to claim whatever exemption to which he might be entitled. But in this case, Debtors have made no attempt to amend Schedule C to claim the life insurance proceeds as exempt, despite the fact Debtor's father died almost two years ago.

Interestingly, the evidence shows that Debtors know they are required to, and in fact did, file an Amended Schedule C approximately seven months after the Trustee originally requested turnover of the life insurance proceeds,[45] but failed to claim these proceeds as exempt. Therefore, although the property could be claimed as exempt, it has not been. The Court thus grants summary judgment to the Trustee as a matter of law in regard to the life insurance proceeds. Debtors shall forthwith turnover to the Trustee the $10,656.94 in life insurance proceeds.

### 2. Property acquired as the beneficiary of a POD, transfer-on-death (TOD) deed, or similar beneficiary designation

---

[44]5 Collier on Bankruptcy ¶ 541.04 (Lawrence P. King ed., 15th ed. rev 2007).

[45]The amendment sought to exempt the 1973 Bell mobile home which was valued at $300; Debtors had not originally claimed it as exempt in their originally filed Schedule C. In addition, the amendment indicated that Debtors were not seeking to exempt the westernmost 81 feet of 1104 4th Street in Centralia, Kansas—presumably to bring their claimed exemption within the one acre limitation placed on homestead exemptions under Kansas law.

18

The second class of property of which the Trustee seeks turnover involves property that was acquired by Debtors, following the death of Ms. Hall's father, by way of a POD beneficiary designation, or some other similar designation. Specifically, the Trustee is seeking Linda Hall's share of the net proceeds from the sale of the decedent's house (which passed to Linda Hall and her siblings by a TOD deed) in the amount of $8,946.79, certificates of deposit (which passed to Linda Hall as a POD beneficiary) in the amount of $38,947.86, U.S. bonds (which passed to Linda Hall as a POD beneficiary) in the amount of $3,731.33, and the proceeds from an IRA in the amount of $2,858.54 on which she was a named beneficiary. Debtors argue that this property was not received by "bequest, devise or inheritance," as required by § 541(a)(5), and thus does not constitute property of the estate.

Section 541(a)(5), in addition to bringing into the estate life insurance proceeds, also brings into the estate any property acquired within 180 days of the filing of a petition into the bankruptcy estate if that property was acquired "by bequest, devise, or inheritance." This Court has already considered the meaning of these terms in the case of *In re Roth*,[46] which dealt with a property interest the debtor acquired in a revocable inter vivos trust upon his father's death, within 180 days of the filing of bankruptcy. As the Court indicated in that case, in the absence of controlling federal law, "property" and "interests in property" are questions of state law.[47] The Bankruptcy Code provides no definition of the terms "bequest,"

---

[46]289 B.R. 161 (Bankr. D. Kan. 2003).

[47]*In re Doughman*, 263 B.R. 905, 907 (Bankr. D. Kan. 1999).

19

"devise" or "inheritance," thus requiring the Court to look to state law for a definition of those terms.

K.S.A. 59-604 suggests that the terms "bequest" and "devise" are limited to the transfer of property by way of will. Although K.S.A. 59-604 does not provide a definition of these terms, their use in this statute is certainly consistent with Debtors' position and does indicate that, under Kansas law, the terms "devise" and "bequest" involve transfers of property by way of will.

Similarly, although Kansas law does not directly define the terms "bequest," "devise" or "inheritance," the Court found in *In re Roth*, and continues to hold, that it is reasonable that Kansas courts would follow the traditional meaning of these terms, as set forth in Black's Law Dictionary. Black's Law Dictionary provides the following definitions of "bequest," "devise" and "inheritance":

**Bequest** – a gift by will of personal property;

**Devise** – a testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor; and

**Inheritance –** property which descends to heir on the intestate death of another.[48]

Based on these definitions, Ms. Hall did not acquire the property by bequest, devise or inheritance. The property did not pass through intestate succession or by will, but rather

---

[48]Black's Law Dictionary (5th Ed. West Pub. Co. 1979).

20

by way of a contractual obligation between Linda Hall's father and the holder of those accounts.[49]  Therefore, § 541(a)(5)(A) does not bring this property into the estate.

The Trustee argues, however, that Linda Hall nevertheless had a contingent interest in the proceeds from those accounts on the date the petition was filed, and that the broad language contained in § 541(a)(1) is sufficient to bring that interest into the estate.  Although there appears to be no controlling precedent on this issue in the Tenth Circuit, this issue was considered by the United States Bankruptcy Court for the Central District of Illinois in *In re Taylor*.[50]  In *Taylor*, the Court held, without analysis but apparently relying on Illinois law, that "while the Debtor's interest in the Payable on Death Funds was a contingent interest at the time of her filing for bankruptcy, it was none the less an interest that is included as an asset of the Debtor's Chapter 7 estate pursuant to the sweeping language of § 541(a)(1)."[51]

Although directly on point, the Court finds *In re Taylor* to not be persuasive because the issue of whether Linda Hall acquired a property right in the POD accounts or the TOD deed prior to her father's death must be decided under Kansas law.[52]  Only after it has been

---

[49]*See Snodgrass v. Lyndon State Bank*, 15 Kan. App. 2d 546, 552 (1991).  *See also* K.S.A. 9-1215 (stating that POD accounts are not testamentary transfers), K.S.A. 59-3507 (stating that TOD deeds are not testamentary transfers), K.S.A. 59-3513(5) (stating that individual retirement plans are not testamentary transfers), and 31 C.F.R. § 315.70(c) (stating that if a U.S. savings bond has filed a beneficiary form, upon the owner's death the bond will automatically transfer to the beneficiaries named, rather than going through the decedent's estate).

[50]2006 WL 1275400 (Bankr. C.D. Ill. 2006).

[51]*Id*. at *2.

[52]*In re Doughman*, 263 B.R. at 907.

Case 06-40887   Doc# 122   Filed 08/21/08   Page 21 of 28

determined that Debtor actually had a legal or equitable property right in those accounts as of the date of filing does § 541(a)(1) come into play to bring the property into the estate.

POD accounts in Kansas are authorized by K.S.A. 9-1215. That section provides that any individual may enter into a written contract with any bank "providing that the balance of the owner's deposit account . . . at the time of death of the owner shall be made payable on the death of the owner to one or more persons . . . ." The statute further provides that

> Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of the beneficiary. <u>The interest of the beneficiary shall be considered not to vest until the death of the owner</u>."[53]

This statute was interpreted by the Kansas Court of Appeals in *Snodgrass v. Lyndon State Bank*,[54] and the court held that "[t]he designated beneficiary acquires <u>no interest</u> in a POD account until the death of the owner." It is clear from the language of the Kansas statute that authorizes POD accounts, as well as Kansas court's interpretation of that statute, that Debtors had no interest in the POD account at the date of filing.

Similarly, TOD deeds are authorized by K.S.A. 59-3501 through 59-3507. The language of the statutes authorizing and governing TOD deeds are quite similar to POD accounts in that TOD deeds transfer ownership of the interest in the property only upon the

---

[53]K.S.A. 9-1215 (emphasis added).

[54]*Snodgrass*, 15 Kan. App. 2d at 552 (emphasis added).

death of the owner,[55] they are revocable at any time,[56] they do not transfer "any ownership" until the death of the owner,[57] and they are not testamentary in nature.[58]  Although the Court did not find a Kansas decision interpreting this statute, because of the similarity of the TOD statute to the POD statute, which has been interpreted by a Kansas appellate court, this Court finds that since here the TOD owner (Linda Hall's father) did not die until after Debtor Linda Hall filed this bankruptcy petition, she had no interest (contingent or otherwise) at the time of the filing of that petition.

The Court similarly finds that Linda Hall did not have an interest in the IRA or the U.S. bonds until the death of her father.  Although the Court has been unable to locate any cases discussing those issues, it nevertheless finds that being the beneficiary of a retirement account or a U.S. bond does not convey any more interest than being the beneficiary of a POD account or TOD deed—which this Court has found conveys no interest at all until the death of the owner.

The Court also finds that the Trustee's position, that the Debtor had a contingent interest in these accounts on the date of filing that would bring them into the bankruptcy estate, would bring the need for the provisions of § 541(a)(5) into question.  The Court can think of no factual or legal basis why the "contingent interest" as a beneficiary of a POD

---

[55] K.S.A. 59-3501(a).

[56] K.S.A. 59-3503.

[57] K.S.A. 59-3502.

[58] K.S.A. 59-3507.

23

account should be included as property of the estate under § 541(a)(1), while a "contingent interest" as beneficiary of a will would be excluded.

In both cases, the debtor has absolutely no right or access to the property until the death of the owner, the name of the beneficiary can be changed at any time without recourse, and the owner of the property can spend the money in any manner he or she chooses, leaving nothing for the beneficiary at death. If such "contingent interests" are to be included in § 541(a)(1), there is no need to include property obtained by will in § 541(a)(5). In fact, including such an interest in § 541(a)(1) would expand on what is authorized under § 541(a)(5), because if the interest is property of the estate under § 541(a)(1), there is no limit on when the debtor's interest must vest. The 180 day period that applies to property under § 541(a)(5) is not applicable to property that is brought into the estate under § 541(a)(1)—meaning a trustee could claim the interest of any debtor who, at the date of filing their petition, was a potential beneficiary under a POD account or a will, even if the debtor's rights to the property did not vest (if ever) until years later.

### 3. Property inherited by Linda Hall

The third class of property at issue in this case includes Linda Hall's pro rata share of her father's tangible personal property that passed to her by intestate succession. This property includes her pro rata share in the net proceeds from the sale of her father's tangible personal property and her pro rata share of his checking account—which together total $4,757.30. Debtors stipulate that this property is properly included in the bankruptcy estate

24

pursuant to § 541(a)(5) and is not otherwise exempt. Therefore, the Trustee is entitled to summary judgment in relation to this property, in the amount of $4,757.30.

## IV.    CONCLUSION

The Court finds that the Trustee's Motion for Summary Judgment is granted in part and denied in part. The Court finds that there is a question of material fact regarding Debtor David Hall's intent regarding his homestead interest in the home and mobile home (both of which are situated on the same acreage). Therefore, the Trustee's Motion for Summary Judgment is denied as it relates to that portion of her objection to Debtors' homestead exemption.

The Court finds that there are no questions of fact concerning the property contained in the Trustee's Motion for Turnover. Debtors agree that the Trustee is entitled to receive Linda Hall's share of the net proceeds from the sale of her father's tangible personal property in the amount of $4,386.56 and her share of her father's bank account in the amount of $370.74 pursuant to § 541(a)(5)(A), as these amounts were received by Ms. Hall by devise, bequest or inheritance within 180 days of the filing of their bankruptcy petition. The Court also finds that the Trustee is entitled to the proceeds from the two life insurance policies totaling $10,656.94, pursuant to § 541(a)(5)(C), as those amounts were received by Debtor Linda Halls as a beneficiary of a life insurance policy within 180 days of the filing of the bankruptcy petition and were never claimed as exempt.

The Court finds that the Trustee is not entitled to Linda Hall's share of the net proceeds from the sale of her father's house in amount of $8,946.79, the certificates of

25

deposit in the amount of $38,847.86, the U.S. bonds in the amount of $3,731.33 or the proceeds from her father's IRA in the amount of $2,858.54, because she did not have a legal or equitable interest in that property at the time of the filing of the petition, and the property did not come to her by way of devise, bequest or inheritance within 180 days of the filing of the bankruptcy petition.

The Court also notes that pursuant to the Pretrial Order,[59] Debtors have agreed to turn over to the Trustee a riding lawnmower with key, all window air conditioning units in campers and buildings, all firearms, two campers, one above ground pool, pool cover, and pump and various equipment and accessories and certain unidentified real estate lots. If that property has not previously been turned over to the Trustee, Debtors are ordered to do so forthwith.

The Court, on June 20, 2008, set this matter for trial on September 16, 2008 in the event the Court did not grant the Trustee's summary judgment motion. That date is a stacked evidentiary docket, and the parties will be contacted with the exact time the trial will commence. That hearing will be used to resolve the issue whether David Hall intended to and did abandon his homestead interest in the family home, and whether he established a new homestead in the mobile home located on the land adjacent to the family home. At that evidentiary hearing, the Court will also hear evidence on that part of the Trustee's motion for

---

[59]Doc. 101.

26

turnover of the property that was identified in Paragraph 6 of the Pretrial order as still being in dispute.[60]

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion for Summary Judgment is granted in part and denied in part. The Trustee's motion is granted to the extent it seeks turnover of Linda Hall's share of the net proceeds from the sale of her father's tangible personal property in the amount of $4,386.56, her share of her father's bank account in the amount of $370.74, and the proceeds from the two life insurance policies in the total amount of $10,656.94. The motion for summary judgment is denied as it relates to Linda Hall's share of the net proceeds from the sale of her father's house in amount of $8,946.79, the certificates of deposit in the amount of $38,847.86, the U.S. bonds in the amount of $3,731.33 and the proceeds from her father's IRA in the amount of $2,858.54, as the Court finds that property is not property of the bankruptcy estate.

The Court understands that the funds from the certificates of deposit ($38,847.86) were deposited with the Trustee during the pendency of this matter, and the Trustee is ordered to return that money to Debtors, minus the $4,386.56, $370.74 and $10,656.94 determined to be estate property.

**IT IS FURTHER ORDERED** that the Court will conduct an evidentiary hearing on September 16, 2008 on the Trustee's Objection to Debtors' Homestead Exemption and the

---

[60]That property is identified as dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, go-carts and one mobile home.

Case 06-40887   Doc# 122   Filed 08/21/08   Page 27 of 28

Trustee's Motion for Turnover to the extent that motion relates to the turnover of any property not otherwise decided by this opinion.

###

Case 06-40887    Doc# 122    Filed 08/21/08    Page 28 of 28