

**SO ORDERED.**

**SIGNED this 17 day of October, 2008.**

_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:                                                     )
                                                           )
**DAVID HALL and LINDA M. HALL,**          )          **Case No. 06-40887**
                                                           )          **Chapter 7**
                          Debtors.                )
_____)

## MEMORANDUM OPINION AND ORDER PARTLY GRANTING TRUSTEE'S OBJECTION TO DEBTORS' HOMESTEAD EXEMPTION AND DENYING REMAINDER OF TRUSTEE'S MOTION FOR TURNOVER OF PERSONAL PROPERTY

This matter is before the Court on the Trustee's Motion for Turnover of Real Estate

and Personal Property[1] and the Trustee's Objection to Debtors' Homestead Exemption.[2] The

Court previously issued a Memorandum Opinion and Order partly granting, and partly

denying, the Trustee's motion for summary judgment,[3] holding that there were material

---

[1]Doc. 9.

[2]Doc. 11.

[3]Doc. 121.

issues of fact barring summary judgment on two main issues. The Court has now heard evidence on the material issues of fact that were in dispute.

Objections to exemptions and motions to turnover property of the estate are contested, "core proceedings" over which this Court has jurisdiction to enter a final order,[4] and the parties stipulate to jurisdiction and venue.

## I. FINDINGS OF FACT

### A. Homestead

In its prior Memorandum Opinion and Order, the Court held that there were genuine issues of material fact regarding the intent of Debtor, David Hall, as to which property qualified to be his homestead on the date of filing this bankruptcy. Specifically, the Court held there were material factual questions as to whether David Hall intended to and did abandon his homestead interest in the two-story family home (hereinafter "house") located at 1104 4th Street in Centralia, Kansas, whether he intended to establish a new homestead in the mobile home located adjacent to the house, or whether he viewed his move to the mobile home as merely a temporary arrangement, and thus not an abandonment of the house. The Court also held that there were genuine issues of material fact concerning certain items of personal property that Debtors claim they do not own, but which they merely allow the true owners to store on their land. Based both upon this Court's previous factual findings,

---

[4]28 U.S.C. § 157(b)(1), (b)(2)(B) and (E) (core proceeding) and 28 U.S.C. § 1334(b).

as well as from the evidence heard at trial, the Court makes the following additional findings of fact.

Debtors, David and Linda M. Hall ("Debtors"), filed a Petition under Chapter 7 of the Bankruptcy Code[5] on September 6, 2006. On the date of filing, Debtors jointly owned a 1.33 acre tract of land within the city limits. At that time, there were two residences on the land, and they were commonly known as 1104 4th Street and 1104 ½ 4th Street. Debtors' Schedule C—Property Claimed as Exempt lists only 1104 4th Street as exempt; the schedules make no reference to the 1104 ½ 4th Street property and imply that both Debtors resided in the house at 1104 4th Street on the date of filing.

Debtors claim that most of this real property is exempt, except for the West 81 feet.[6] The entire tract of real estate, including both the house and the mobile home situated thereon, is valued at $40,000. There is a $7,500 mortgage on the property.

The house was occupied by Linda Hall and two children on the date of filing. David Hall did not occupy the house on the date of filing, and had not lived there since January 2004 due to a substantiated finding of child abuse. That finding prohibited him from residing with his family for a few months after the finding of abuse. Instead, on the date of filing,

---

[5]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

[6]Debtors' original Schedule C simply lists "1104 4th Street, City of Centralia, Nehama County, Kansas," as the address of the homestead, and makes no reference to the size of the tract. Debtors' Amended Schedule C, filed May 9, 2007 (well after the Trustee objected to the original Schedule C on the basis that the tract exceeds one acre within the city limits) provides the real estate description for the tract, which contains the phrase "containing 1.33 acres, more or less." Amended Schedule C then states "most of the above tract is claimed as exempt; see attachment"). The attachment contains a surveyor-type drawing of the tract with a handwritten note that states "[t]his tract claimed as exempt, except for the West 81 feet."

Case 06-40887    Doc# 128    Filed 10/17/08    Page 3 of 25

David Hall lived in a mobile home also located on the 1.33 acres. This property was listed as 1104 ½ 4th Street in the local telephone book, and is jointly owned by both Debtors.

When David moved into the mobile home in January 2004, he took several steps to establish it as his separate and distinct residence. First, as noted above, Debtors obtained a separate address for the mobile home, and it then became commonly referred to as 1104 ½ 4th Street. For mailing purposes, therefore, the mobile home was no longer considered to be part of the property located at 1104 4th Street. David Hall moved furniture and kitchenware into the mobile home so that he could live there independently, without needing to use any of the facilities within the house. Debtors also hooked up separate utilities to the mobile home, including a satellite dish for his television, and David Hall paid for those expenses himself. Linda Hall paid for the utilities for the house. David testified he was able to freely enter the home at 1104 4th Street to visit, but that the mobile home was where he actually resided on the date they filed their joint bankruptcy petition.

The Court also received testimony from non-party witnesses concerning how Debtors represented their living arrangements to others. The first witness, Ms. Blevins, who is employed by the Kansas Department of Social and Rehabilitation Services ("SRS"), was assigned the case files for David and Linda Hall when they applied for government benefits through SRS. As early as April 5, 2004, Debtors indicated to SRS that David was not living in the house, but instead was living in the mobile home at a separate and distinct address adjacent to the house.

4

In addition, on March 1, 2006, David applied for food stamps using the address of 1104 ½ 4th Street. David indicated in that application, which he signed under penalty of perjury, that he was living in his own home. That application also required David to indicate whether he intended to return to his former home at 1104 4th Street. He indicated he did not intend to return to that residence. During the same time frame, in her own application for SRS assistance, Linda Hall also claimed that David lived in the mobile home, and not in the house with her.

The second witness, Ms. Olson, also works for SRS. She first met Debtors after an event that occurred at Debtors' then joint home around Christmas, 2003. SRS received information on or about January 9, 2004 that David Hall had struck his child a few weeks earlier. Ms. Olson testified that David Hall informed her that he had moved out of the house and was living in the mobile home. She testified that if he had not moved out of the house where his child resided, she would have prepared a safety plan and possibly had discussions with law enforcement about the safety plan. However, no safety plan was deemed necessary because he had already vacated the house.

Ms. Olson further testified that the family could have received family preservation counseling through SRS for up to a year if the parties needed it, but that the preservation services were stopped after approximately three months. Accordingly, nothing prevented David from moving back into the house after April 19, 2004, over two years prior to filing bankruptcy.

Case 06-40887    Doc# 128    Filed 10/17/08    Page 5 of 25

Finally, the last piece of evidence regarding Mr. Hall's intent, vis á vis his residence, was Mr. Hall's own sworn testimony provided at the first meeting of creditors on November 21, 2006. At that time, the Trustee asked questions about where each Debtor resided, and about the house and mobile home. Under penalty of perjury, Debtor David Hall admitted he lived exclusively in the mobile home on the date of filing as well at the time of the first meeting of creditors, and that "I'll live there 'til I die if you don't come and get it."

### B. Other Real and Personal Property

On the date of filing, Debtors owned certain non-exempt real and personal property, many of which items were not initially listed on Debtors' bankruptcy schedules. Some of the unlisted personal property included a riding lawn mower, window air conditioning units in campers and buildings, firearms, two campers (instead of the one listed), one above-ground pool with pool cover, pump and various equipment and accessories. Debtors also failed to disclose that they owned 18 vacant lots in Centralia. Debtors have now, however, agreed to turn over the above-itemized real and personal property to the Trustee, so those items are no longer at issue in this case.

The Trustee also claimed that Debtors owned, but failed to originally disclose, additional items of personal property including dog crates, a boat, motor, trailer and cover, a satellite dish, two vehicles (thought to be Blazers), a tank with sprayer and trailer, and go-carts. Although Question 14 on Debtors' Statement of Financial Affairs indicates Debtors are not holding any property for another person, the undisputed evidence presented at trial demonstrated that this property actually belonged to other individuals, and that Debtors

6

merely allowed this property to be stored, free of charge, on the 1.33 acres and/or on the 18 vacant lots.

## II.    ANALYSIS

### A.    Issues

1.    Whether Debtors' homestead exemption claim is supported by Kansas law.

2.    Whether the remaining personal property is actually owned by Debtors, making it property of the bankruptcy estate subject to turnover.

### B.    Trustee's Objection to Debtors' Homestead Exemption

Section 522 of the Bankruptcy Code governs exemptions.[7]  Subsection (b) allows the states to prohibit their citizens from choosing the federal exemptions set forth in subsection (d) and to require the use of state exemptions.  Kansas has opted out of the federal plan and enacted its own exemptions.[8]  A debtor's exemption rights are determined as of the date of the filing of the petition.[9]

---

[7]11 U.S.C. § 522.

[8]K.S.A. 60-2312.

[9]11 U.S.C. § 522(b); *Mansell v. Carroll (In re Mansell)*, 379 F.2d 682, 684 (10th Cir.1967) (holding "[i]n a bankruptcy proceeding the determination of what property is exempt is made as of the date of filing ...."); *Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 210 (10th Cir. BAP 2002), aff'd 331 F.3d 750 (10th Cir. 2003) (holding that debtor's right to exemption is determined as of date petition is filed).

7

These joint Debtors are attempting to exempt as their joint homestead one acre[10] on which both the house and mobile home are located. The Trustee raises two objections to Debtors' homestead exemption: 1) Debtors reside in two different structures located on the same 1.33 acre tract, and cannot exempt each other's one-half interest in their respective homes, and 2) the tract of land exceeds one acre within the city limits. The parties agree that Kansas law limits the exemption to one acre within the city limits.

The Trustee claims that David Hall is entitled to only one homestead, and that his homestead is limited to the mobile home, and theoretically the land upon which it rests, that he occupied on the date of filing. She argues he thus cannot also use his homestead exemption to exempt his one-half interest in the house that his wife and children occupy. Similarly, the Trustee claims that Linda Hall's homestead is limited to the house that she and the children occupy, and that she cannot exempt her one-half interest in the mobile home that her husband occupied on the date of filing. The Trustee thus seeks turnover to the estate of a one-half interest in the mobile home and a one-half interest in the house.

Under Kansas law, the party claiming homestead protection has the burden of proving the establishment of the homestead.[11] In bankruptcy, however, Federal Rule of Bankruptcy Procedure 4003 governs exemptions; subsection (c) of that rule provides: "In any hearing

---

[10]In the Pretrial Order, at pages 6-7, Debtors indicate that if their land is larger than one acre, they will surrender the portion of their land necessary to bring it within the provisions of the Kansas homestead exemption, as both the mobile home and the house can fit within one acre. But Debtors' own amended Schedule C admits the land contains 1.33 acres, and their response to the summary judgment motion indicates agreement with the Trustee's Fact No. 3, which indicates that the tract encompasses 1.33 acres.

[11]*See Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 344 & 349 (1974); *Bellport v. Harder*, 196 Kan. 294 (1966).

8

under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." This means that the claimed exemption is presumed to be valid, and the Trustee has the burden of producing positive and clear evidence to rebut the presumption.[12] If she does so, the burden thereafter shifts back to Debtors to come forward with evidence to demonstrate that the claimed exemption is proper.[13] The party claiming the homestead interest may properly testify as to his or her intent regarding a proposed return to the property, and such testimony is sufficient to support a finding that the property remains a homestead.[14]

To determine the validity of Debtors' claimed homestead exemption, the Court must look to applicable Kansas law.[15] The Kansas Constitution provides for a homestead exemption of one acre within the city limits.[16] The Kansas legislature's statutory version is a bit more expansive; K.S.A. 60-2301 provides, in pertinent part:

> A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated

---

[12]*In re Estate of Fink*, 4 Kan. App.2d 523, 527-28 (1980) (holding that party attempting to defeat exemption must show by positive and clear evidence that the homestead has been abandoned, as there is a presumption that once established, the homestead continues unless the contrary is shown). *Also see In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005) (holding that objecting party bears burden of proof on an objection to a claimed exemption by a preponderance of the evidence that the exemption was improper).

[13]*In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

[14]*In re Estate of Fink*, 4 Kan.App.2d at 528.

[15]*In re Robinson*, 295 B.R. at 152 (citing *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003)).

[16]*See* Kansas Const., Art. 15, §9.

without the joint consent of husband and wife, when that relation exists. . . .
(Emphasis added).

"In determining whether a debtor is entitled to claim an exemption, 'the exemption laws are
to be construed liberally in favor of exemption.'"[17]

To determine the merits of the Trustee's objection, there are a number of legal and
factual issues that must be resolved. First, the Court must determine whether, under Kansas
law, married debtors filing a joint bankruptcy petition may each claim separate tracts of
property as their homestead. In other words, is there any set of facts under which a married
couple can retain two homesteads? If so, the Court must then determine whether, under the
facts of this case, the mobile home located at 1104 ½ 4th Street should be treated as a
separate tract of property, or whether it should simply be considered an outbuilding or guest
house connected to, and part of, the main house located at 1104 4th Street.

Finally, depending on the outcome of both of those issues, the Court must then decide
whether David Hall established the mobile home at 1104 ½ 4th Street as his homestead prior
to the filing of this bankruptcy, and whether he maintained that residence as his homestead
on the date of filing. After making those factual and legal findings, the Court must then
determine what options are available to these Debtors.

---

[17]*In re Lampe*, 331 F.3d at 754 (quoting *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).

### 1. Can married co-debtors, under any circumstance, claim separate homesteads under Kansas Law?

The threshold question that must be answered is whether Kansas homestead law allows married debtors, under any circumstance, to each claim a separate homestead. The Kansas homestead exemption has both statutory and constitutional roots.[18] Neither the language in K.S.A. 60-2301, nor the language in the Kansas Constitution, however, specifically addresses the issue of whether joint debtors, who are married but legitimately separated and living in separate residences, can each select a different homestead. The language certainly does not preclude this result, but this precise issue has not been addressed in any reported or published case by the Kansas courts or any federal court interpreting the language.

Although no reported cases have addressed this issue,[19] the Court finds that the Kansas courts would likely interpret the Kansas homestead laws to allow married debtors to claim separate homesteads when the debtors actually live apart and have clearly established both

---

[18]*See* K.S.A. 60-2301 and Kansas Const. Art. 15, § 9.

[19]The only reported decision that appears to address even a remotely similar issue is *Commerce Bank of Kansas City v. Odell*, 16 Kan. App. 2d 704 (1992). The issue in that case, however, was whether joint tenants, who although divorced still resided on the same 240 acres of farmland located outside the city limits, could each claim 120 acres of the land as exempt. The Kansas Court of Appeals held that the owners of the land could not stack exemptions, and thus were limited to claiming a single exemption of 160 acres of land, leaving the remaining 80 acres of land unprotected from claims of creditors. *Odell* is clearly distinguishable from this case, however. Here, the joint tenants remain married, and this Court must determine whether married but separated individuals who live at separate residences on a 1.33 acre tract can each claim their own homestead exemption for the property on which they reside, not whether they can divide a previously undivided tract of land into separate homesteads. Therefore, the Court finds that *Commerce Bank of Kansas City v. Odell* does not provide guidance to this Court under the unique facts of this case.

11

properties as their respective homesteads.[20]  First, the Kansas Supreme Court has directed

that exemption claims are to be liberally construed in favor of debtors.[21]  This is certainly true

in the case of the Kansas homestead exemption.[22]  Therefore, in the absence of any authority

to the contrary, the Court must view this homestead exemption issue in a manner that is most

favorable to Debtors, which this court finds would be to allow for separate homestead claims

if each Debtor can establish that they are, in fact, entitled to claim a separate tract of property

as their homestead.

The Court also notes that other exemptions allowed by statute permit both a husband

and a wife to separately claim an exemption, even though the statutory authority for the

exemption does not specifically provide for two exemptions for married couples.  For

example, K.S.A.60-2304(c) provides that a debtor is entitled to claim as exempt one

automobile, with a value up to $20,000.  It has essentially gone unchallenged that married

debtors may each utilize the automobile exemption, resulting in joint debtors exempting two

automobiles in bankruptcy.  Similarly, Courts have allowed debtors to claim separate

exemptions for items such as tools of the trade under K.S.A. 60-2304(e), provided each

---

[20]*See In re Kester*, 339 B.R. 749, 754 (10th Cir. BAP 2006) (noting that when the Kansas Supreme Court has not addressed an issue dealing with exemptions under state law, the court is "charged with predicting how it would rule under the facts of this case.")

[21]*In re Lampe*, 331 F.3d at 754.

[22]*In re Kester*, 339 B.R. at 754 (citing *Kansas ex. rel. Apt v. Mitchell*, 194 Kan. 463 (1965) (stating "It suffices to say that Kansas has zealously protected the family rights in homestead property by liberally construing the homestead provisions in order to safeguard its humanitarian and soundly social and economic purposes . . . .")).

12

debtor can show that they each actually have an ownership interest in the property and both personally use the tools in their trade or occupation.[23]

Given the policy considerations this Court must utilize when determining exemption issues, as well as the treatment of other Kansas exemptions, the Court finds that married debtors may claim separate homesteads provided they can establish that both tracts of property qualify as a homestead. The Court notes that this holding is specifically limited to circumstances in which a husband and wife have each legitimately established a separate homestead pursuant to Kansas law, which separate homesteads were not created for the purpose of defeating or defrauding creditors.[24] It is only in those admittedly rare situations where a husband and wife have remained married, but can show that they have elected to and do live apart on a permanent basis, that this holding will be applicable.

### 2. Should the mobile home be considered David Hall's separate residence?

Having determined that, under appropriate (and likely very limited) circumstances, Kansas law would allow married debtors to claim separate homesteads, the Court must now determine whether the mobile home should be considered David Hall's separate residence,

---

[23]*See, e.g. In re Lampe*, 331 F.3d at 755 (allowing married debtors to each claim a tools of the trade exemption in farm equipment). *See also In re Zink*, 177 B.R. 713, 715 (Bankr. D. Kan. 1995) (holding that husband and wife could both claim tools of the trade exemption because both had an ownership interest in the property and both were engaged in farming as their primary occupation), *In re Kobs*, 163 B.R. 368, 373 (Bankr. D. Kan. 1994), and *In re Griffin*, 141 B.R. 207, 210 (Bankr. D. Kan. 1992).

[24]For this reason, cases involving vacation homes or temporary residences will almost certainly not meet these requirements. *Cf. In re Rasmussen*, 349 B.R. 747, 754 -755 (Bankr. M.D. Fla. 2006) (holding that under Florida law, married spouses residing in separate residences may claim a homestead for each residence only if they legitimately live apart in separate residences) (citing *In re Colwell*, 196 F.3d 1225, 1226 (11th Cir.1999)).

13

or whether it should merely be treated as an outbuilding or guest house located on the homestead that includes the house.

While this Court has been unable to locate any reported decisions that are factually similar to this one, the Kansas Supreme Court has had several opportunities to address the impact the use of a separate structure located on the same tract of land as the house in which one or more family members reside, has on a homestead claim. For example, in *Hoffman v. Hill*,[25] the Kansas Supreme Court allowed a judgment debtor to claim as exempt two adjoining lots where a building was erected on one lot with a porch extending over to the second lot. The building was used as both a residence for his family and a hotel and boarding house. The defendant also maintained a separate building on the second lot that was used in connection with the family, hotel and boarding house, along with other out-buildings that were located on both lots. The court held:

> . . . it makes no difference that the homestead or a part thereof may be used for some other purpose than as a homestead, where the whole of it constitutes only one tract of land not exceeding in one acre the amount permitted to be exempted under the homestead exemptions laws, and where the part claimed as not part of the homestead has not been totally abandoned as a part thereof by making it, for instance, another person's homestead or a part thereof, or by using it or permitting it to be used in some other manner inconsistent with the homestead interests of the husband and wife.[26]

---

[25] 47 Kan. 611 (1892).

[26] *Id.* at 613-14.

14

Similarly, in *Layson v. Grange*,[27] the Kansas Supreme Court held that where a debtor owned three lots that combined to include less than one acre, and also contained a carpenter shop that had been converted to rooms that were rented out to another family, the entire tract of land could be exempted under Kansas homestead laws.

The Kansas Supreme Court also held, in *Iola Wholesale Grocery Co. v. Johnson*,[28] that two contiguous lots that totaled less than one acre qualified as a homestead even though the owner, who resided with his family on the property, also operated a grocery store in a separate building on the property. Finally, in *Barten v. Martin*,[29] the Kansas Supreme Court held that where the debtor resided with his family in a house on a lot that also included a separate building that was rented out to a dentist, the entire property retained its exempt status under Kansas homestead laws.[30]

These holdings of this state's highest court make clear that the homestead exemption also covers a separate structure on land where the debtor resides, even if it is not actually used as the residence of the debtor or his family. Although the facts of these cases, again, are not directly on point, this Court firmly believes the Kansas courts would find it wholly

---

[27]48 Kan. 440 (1892).

[28]114 Kan. 89 (1923).

[29]133 Kan. 329 (1931) (holding that to show loss of exemption of part of homestead, circumstances must show an intent to abandon that part as a homestead, and the use to which that portion of the premises is put should be inconsistent with homestead character to warrant exclusion of that part).

[30]In addition to the cases decided by the Kansas Supreme Court dealing with separate structures on the same tract of land, two Kansas bankruptcy courts have also recently held that where debtors own a duplex but reside only in one side of the property, while leasing out the other half, they are nevertheless entitled to claim the entire duplex as exempt under Kansas law. *In re McBratney*, 2007 WL 2684072 (Bankr. D. Kan. 2007) and *In re McCambry*, 327 B.R. 469 (Bankr. D. Kan. 2005).

inconsistent to protect the homestead exemption on a separate building used as a hotel or rented to non-family members, but deny protection when a separate building on the protected tract is occupied by a family member, as is the case here.

That said, all of the cited Kansas cases have one factor in common that is not present here. In each of those cases, the separate properties in question were at all times under the control of the debtor and were only leased or rented out to tenants. There was never any intent by the debtor in those cases to abandon that portion of the property that contained the additional structures or to treat any portion of the homestead as the permanent homestead of another individual. In fact, in *Hoffman v. Hill*, the Kansas Supreme Court specifically limited its holding by stating that the homestead exemption remained attached to the entire property as long as "the part claimed as not part of the homestead has not been totally abandoned as a part thereof <u>by making it, for instance, another person's homestead</u> or a part thereof, or by using it or permitting it to be used in some other manner inconsistent with the homestead interests of the husband and wife."[31]

The Court finds that Debtors' actions in relation to the mobile home, and the land upon which it is located, require this Court to treat the mobile home as David Hall's separate residence or homestead, rather than simply as an outbuilding or guest house connected to the house. First, the Court finds that both Debtors in fact treated the mobile home as David's separate residence. They obtained a separate address for the mobile home, which was then

---

[31]*Hoffman*, 47 Kan. at 613-14 (emphasis added).

16

reflected in the local telephone book at all relevant times. This is a clear indication that the parties no longer considered the mobile home to be part of the house located at 1104 4th Street. In addition, the parties installed separate utilities and a satellite television disc in the mobile home. Finally, as will be discussed in more detail below, both Debtors independently treated the mobile home as David Hall's separate residence when applying for government benefits.

It is clear from Debtors' actions that they intended to establish, and in fact did establish, the mobile home as a separate residence from the two story house located at 1104 4th Street. Accordingly, at the time of the filing of the bankruptcy petition, the mobile home was not used merely as an outbuilding or guest house that could be considered part of the homestead located at 1104 4th Street, but was instead David Hall's separate residence that happened to be located next to the original family home.

### 3. Did the mobile home qualify as David Hall's homestead as of the date of filing?

The next question the Court must answer is whether the mobile home was David Hall's residence on the date of filing such that he could claim it as his homestead. In order to establish a homestead, a party must intend to occupy the property as a homestead and must actually occupy it as a homestead within a reasonable time after the intent is formed.[32] The owner's intentions are critical in determining whether a homestead has been established.[33]

---

[32]*In re Snook*, 134 B.R. 424, 425 (D. Kan. 1991) (citing *Security State Bank of Scott City v. Coberly*, 5 Kan. App. 2d 691 (1981)).

[33]*Id.* (citing *Smith v. McClintock*, 108 Kan. 833 (1921)).

17

Once a homestead is established, two elements are required to find that the prior homestead has been abandoned:  removal from the property and an intent not to return.[34]

There is no question that prior to December 2003, David Hall resided in the house located at 1104 4th Street with the rest of his family, and that he considered it his homestead. However, following a substantiated finding of child abuse, David was required to and did move out of the house in January 2004.  He lived in a hotel for a very short period of time, but then moved into the mobile home located adjacent to the house once he was able to make it habitable.  He lived in the mobile home at all times between January 2004 and at least through the date of the § 341 first meeting of creditors, and he repudiated his homestead interest in the family house by doing so.

Even though case law confirms that someone who involuntarily leaves a homestead does not necessarily abandon his homestead rights in it,[35] here it is clear that nothing prevented David Hall from returning to the house (following the child abuse incident) any time after April 19, 2004.  Although the evidence showed that Debtor visited the house from time to time thereafter,[36] we know that at least for the next thirty months—until at least the

---

[34]*Id.* at 425-26 (citing *In re Estate of Fink*, 4 Kan. App. 2d 523 (1980)) and *Giblin v. Beeler*, 396 F.2d 584 (10th Cir. 1968) (citing *Bellport v. Harder*, 196 Kan. 294 (1966)).

[35]*In re Garstecki*, 364 B.R. 95 (Bankr. D. Kan. 2006) (holding that elderly debtor's move to a nursing home did not constitute a voluntary abandonment since he expressed intent to return to the homestead); *Withers v. Love*, 72 Kan. 140 (1905) (holding that fact owner was incarcerated did not result in voluntary abandonment of homestead).

[36]*Beard v. Montgomery Ward &Co.*, 215 Kan. 343 (1974) (holding that being a casual visitor of the house is wholly inconsistent with an intent to make the house a permanent residence).

date of his testimony at the meeting of creditors, he still considered the mobile home as his homestead, and testified under oath that he intended to remain in the mobile home "'til I die."

All of this evidence results in the finding that David had, prior to filing the bankruptcy petition, abandoned his homestead at 1104 4th Street, and expressed the intent to remain in the mobile home as his permanent residence.[37]  Although his testimony, under penalty of perjury at the first meeting, is the most important evidence of this intent, several other facts also support a finding that at that time, David Hall did not intend to return to the family house.  Those other facts include his creation of a separate address for the mobile home, the creation of a separate post office box to receive mail, the installation of the satellite disc for the mobile home, application for government benefits using the mobile home as his residence, noting in those papers under penalty of perjury that he did not intend to return to the family home, and having separate utility lines connected to the mobile home.  The fact that David and Linda separately paid for their respective utilities is also demonstrative of this intent.  All of these actions, taken together, indicate an intent by David Hall to make the mobile home a permanent residence, rather than a temporary accommodation.

Admittedly, by the date of trial on this issue, David Hall articulated a change of heart about his prior decision to abandon the house, and adopt the mobile home as his permanent homestead.  He testified that he had recently decided to move back into the house at 1104 4th Street, and intended to only use the mobile home when he had friends over to hunt (because

---

[37]Because the availability of exemptions must be determined as of the date of the filing of the petition, it is that date that is critical when determining whether David Hall intended to establish the mobile home as his homestead.

Case 06-40887   Doc# 128   Filed 10/17/08   Page 19 of 25

his wife didn't like having them in the family home). Although the Court did consider this testimony in making this decision, the Court finds that David Hall's intent to not return to the family home was clear as of the date of filing, and his decision, formed at some point after the first meeting of creditors when the Trustee asked pointed questions that likely made him realize his prior actions could jeopardize the house's exemption, does not alter this finding.

### 4. Effect of the Court's ruling regarding the Debtors' two homesteads

At the time the bankruptcy petition was filed, David Hall's residence consisted of the mobile home located at 1104 ½ 4th Street, and Linda Hall's residence consisted of the house at 1104 4th Street. Each owned a joint interest in the other's residence, and each residence would qualify as an exempt homestead for the respective resident. The Trustee argues that David cannot exempt the one-half interest in the house Linda occupied, and Linda cannot exempt the one-half interest in the mobile home David occupied. The Court disagrees under the facts of this case.

The Kansas homestead statute specifically provides that a debtor may exempt, as a homestead, "one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner <u>or by the family of the owner</u>, or by both the owner and family thereof, together with all the improvements on the same . . . ."[38] Kansas law does not require a debtor to reside in the home he elects to claim as

---

[38] K.S.A. 60-2301(emphasis added).

Case 06-40887   Doc# 128   Filed 10/17/08   Page 20 of 25

exempt, if the debtor can show that his or her family occupies that residence. The statute clearly provides that the residence does not have to be occupied by both the owner and the owner's family to qualify under the Kansas homestead exemption by stating that the residence must be occupied "by the owner or by the family of the owner, or by both the owner and family thereof."

There is no dispute that at the time of filing bankruptcy, David Hall's family resided in the house at 1104 4th Street, even if he did not. David Hall can thus make an election. He can choose to either exempt the property in which he was residing at the time of filing—1104 ½ 4th Street—or to exempt the property where his family was residing at the time of filing—1104 4th Street. He cannot exempt both.[39]

In light of this decision, Debtors will be required to amend their schedules to expressly reflect which homestead they will respectively choose to exempt, using the 1104 4th Street versus the 1104 ½ 4th Street addresses as well as a precise legal description so that the acreage can be ascertained.[40] David Hall can choose to exempt either his residence at the time of filing, which was unequivocally the mobile home, or he can choose to exempt his family's residence at the time of filing—the house. Linda Hall can elect the house, which

---

[39]Similarly, Linda Hall could choose to elect the mobile home, and the land upon which it rests, up to one acre, as her homestead, since a member of her family—David Hall, lived there.

[40]*Cf. Meech v. Grigsby*, 153 Kan. 784, 788-89 (1941) (holding that claimant of homestead should be required to select, and "definitely describe," the actual one acre homestead [out of the possible two or three acres] at the time the matter is before the court, as to fail to do so would result in endless confusion in future proceedings). *See also* K.S.A. 60-2302, which requires householder to designate in writing what land he regards as his homestead "with a description thereof."

Case 06-40887   Doc# 128   Filed 10/17/08   Page 21 of 25

was her residence at filing, or the mobile home, which was the residence of one of her family members at the time of filing.

If both elect the house and the land upon which it sits, Debtors will be required to surrender to the Trustee the mobile home, as well as 0.33 acres of land, because the tract exceeds the homestead limit of one acre within city limits, and because that mobile home cannot be treated as a mere outbuilding, since David did claim it as his separate and distinct residence. If David Hall elects to claim the mobile home as exempt, and Linda claims the house, the Trustee will be entitled to receive David's one-half interest in the house and Linda Hall's one-half interest in the mobile home.[41] And, obviously, if both David and Linda elect to claim the mobile home and acreage as exempt, an admittedly unlikely scenario in light of its reported de minimis value, the trustee would be entitled to the house, and the remaining .33 acres of land.

### C.    Trustee's motion for turnover

In addition to her objection to Debtors' homestead exemption, the Trustee also seeks turnover of certain other personal property and real estate. In the Pretrial Order, Debtors agreed to turnover certain property, and that property is no longer in dispute. Further, in ruling on the Trustee's motion for summary judgment, the Court has already held that the personal property obtained by Linda Hall following her father's death was not property of

---

[41]Again, the Court distinguishes this case from *Commerce Bank of Kansas City v. Odell*, 16 Kan. App. 2d 704 (1992), on the basis that the Court finds that the land that includes the mobile home located at 1104 ½ 4th street is not the same tract of land as the land that includes the house located at 1104 4th Street. Had the parties not established the mobile home as a separate and distinct residence, then *Odell* would have been controlling and the parties would not have been entitled to divide the 1.33 acres of land in an effort to stack their exemptions to claim the entire tract of land.

the estate, with the exception of certain life insurance proceeds that could earlier have been claimed exempt, but never were.  The Court incorporates, by reference, its factual and legal analysis on those issues.

However, Paragraph 6 of the Pretrial Order identified additional property that was still in dispute.  The Trustee did not produce any evidence at trial to show that the disputed dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, or go-carts actually belonged to Debtors on the date of filing.  Instead, the evidence at trial conclusively showed that the property in question belonged to other individuals, and that Debtors had merely allowed the owners to store the property on their land, as an accommodation.[42]  Therefore, the Trustee's motion for turnover is denied as to the dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, and go-carts.

The only remaining item of property at issue in the Trustee's motion for turnover is the mobile home that was at issue in the objection to the homestead exemption.  Because the Court has now ordered Debtors to elect whether they are going to exempt the house or the mobile home, the Court finds this separate turnover request will be governed by that election.

---

[42]The Trustee correctly noted that this property was not disclosed on Debtors' Statement of Financial Affairs, prepared by Debtors' first counsel, which specifically requires debtors to identify property they are holding for another individual.  One of the purposes of this section of the SOFA, if not the sole purpose, is specifically to prevent the need for these types of trials by providing a case trustee with the information necessary to determine whether property that appears to belong to debtors actually belongs to someone else and is not part of the bankruptcy estate.  Had Debtors properly completed their SOFA and identified this property as belonging to other individuals, the trial on these items of property may well have been avoided.

## III.    CONCLUSION

The Court finds that so much of the Trustee's Motion for Turnover of Real Estate [18 lots] and Personal Property that remained at issue following the Court's Memorandum and Order concerning the summary judgment motion is denied.  Accordingly, the dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, and go-carts do not have to be turned over, as they were not property of the estate at the time of filing.

The Court holds that these Debtors did, in fact, create two separate residences consisting of the mobile home for David Hall, and the house where the rest of the family lived for Linda.  Debtors are thus required to promptly amend their Schedule C to specifically designate and describe which residence(s) they elect to exempt, including the legal description of the acreage being exempted.  The amendment shall be filed by **November 6, 2008**.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Motion for Turnover of Real Estate and Personal Property[43] is denied as it relates to the dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, and go-carts.

---

[43]Doc. 9.

24

**IT IS FURTHER ORDERED** that the Trustee's Objection to Debtors' Homestead Exemption[44] is sustained, in part, and Debtors shall amend their Schedule C by **November 6, 2008** in a manner consistent with this opinion.

**IT IS FURTHER ORDERED** that the Courts' prior rulings granting in part, and denying in part, the Trustee's summary judgment motion[45] remain in effect, and are incorporated herein by reference.

###

---

[44] Doc. 11.

[45] Doc. 121.

Case 06-40887    Doc# 128    Filed 10/17/08    Page 25 of 25